UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

DANIELE INTERNATIONAL, INC. :
: C.A. No. 1:15-cv-318
       Plaintiff, :
:
v. :
:
MAREL, INC., :
:
       Defendant. :

## VERIFIED COMPLAINT

Plaintiff Daniele International Inc., as and for its Verified Complaint against Defendant Marel, Inc., alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

1. Daniele International, Inc., doing business as Daniele, Inc. ("Daniele") is a corporation organized and existing pursuant to the laws of the State of Rhode Island, with its principal location in Pascoag, Rhode Island.

2. Defendant Marel, Inc. ("Marel") is a food processor supplier organized and existing pursuant to the laws of Kansas with its principal place of business in Lenexa, Kansas.

3. This Court has jurisdiction over this matter based on diversity of citizenship, pursuant to 28 U.S.C. § 1332, because Daniele and Marel reside in different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4. Venue lies in this district under 28 U.S.C. § 1391(b) because Daniele is a resident of and transacts business in this District, and a substantial part of the events giving rise to the claims for relief occurred in this District.

## FACTUAL ALLEGATIONS

5. Daniele is engaged in the production, distribution, and sale of Italian-style specialty foods for both domestic and international markets. Daniele is best known for its cured meat products, including salami, prosciutto, and pancetta.

6. In 2011, Marel sold Daniele three (3) food processing machines consisting of one (1) Marel Poly Slicer 3000 and two (2) Marel Poly Slicer 1000s. The poly slicers are a critical component in Daniele's production line.

7. In 2014, one of the poly slicers experienced a number of operational problems. For example, it would leak grease, rise to an inappropriate temperature during operation, and "seize up."

8. Daniele reported these problems to Marel. Marel dispatched a technician to inspect the poly slicer and attempted to service it. After inspection, Marel told Daniele that it needed to purchase a new orbital blade head, or "orbital head," to fix the problems. The orbital head is a component of the poly slicer that slices food products.

9. Accordingly, in December 2014, Daniele purchased an orbital head from Marel (a copy of the invoice for this new orbital head is attached as Exhibit 1). Daniele paid Marel for this new orbital head. Upon information and belief, this new orbital head was installed on or about January 2015.

10. After installation, the poly slicer continued to exhibit the same issues with leaking grease and high temperatures that existed with the old orbital head. Daniele was forced to shut down the poly slicer, which resulted in decreased production, delayed shipments and cancelled customer orders.

11. Daniele contacted Marel about these problems. Marel again dispatched a technician. Marel's technician inspected the poly slicer and determined that the new orbital head

was defective and unusable.  The technician arranged for a replacement orbital head to be sent to Daniele under a "warranty exchange."

12.     The replacement orbital head was installed on or about February 2015.  After installation of this replacement orbital head, the poly slicer continued to exhibit the same issues with leaking grease and high temperatures that were previously observed.  Daniele was again forced to shut down the poly slicer, which adversely impacted its production.

13.     Daniele again contacted Marel about the problems with the poly slicer.  Daniele conveyed to Marel its frustration with Marel's handling of the matter, and that Daniele was inclined to replace the poly slicer.

14.     Marle advised Daniele that Daniele could fix the problem with the poly slicer by purchasing another new orbital head.  Marel arranged to send its technician to oversee the installation of the new orbital head and the operation of the poly slicer.  Daniele was reluctant to get another orbital head but agreed to do so based on Marel's express assurances that a new orbital head would fix the problems with the poly slicer.

15.     On or about March 2015, Marel's technician installed the third orbital head on the poly slicer.  Installation of the third orbital head did not resolve Daniele's issues with the poly slicer.  In fact, it appeared to have made the problems worse because several days after the installation of this third replacement orbital head, the poly slicer would not start.

16.     Shortly thereafter, Daniele permanently removed the poly slicer from production.  As a result of all of the disruptions in production associated with the various defective and malfunctioning orbital heads, Daniele could not meet its production goals and was required to reduce a number of customer orders, and cancel other orders.

## COUNT I
## INTENTIONAL MISREPRESENTATION

17. Daniele repeats and realleges the facts set forth in paragraphs 1 through 16 as though fully set forth herein.

18. Marel represented to Daniele that (1) the new orbital head would work; and (2) the new orbital head would fix the problems with the poly slicer.

19. Marel's representations of material fact to Daniele concerning the orbital head were knowingly false when made.

20. Marel made the false representations of material fact with the intent of inducing Daniele to continue to purchase Marel component parts and services, and to dissuade Daniele from replacing the poly slicer.

21. Daniele justifiably relied on Marel's representations of material fact concerning the orbital head, and Daniele would not have purchased Marel component parts and services and deferred replacing the poly slicer but for those representations of Marel.

22. Daniele's justified reliance on Marel's representations of material fact concerning the orbital head were to Daniele's detriment and damaged Daniele in an amount to be proven at trial.

## COUNT II
## NEGLIGENT MISREPRESENTATION

23. Daniele repeats and realleges the facts set forth in paragraphs 1 through 22 as though fully set forth herein.

24. Marel represented to Daniele that (1) the new orbital head would work; and (2) the new orbital head would fix the problems with the poly slicer.

25. Marel's representations of material fact to Daniele concerning the orbital head were false.

26. Marel knew or should have known that the representations of material fact to Daniele were false.

27. Marel made the false representations of material fact with the intent of inducing Daniele to continue to purchase Marel component parts and services, and to dissuade Daniele from replacing the poly slicer.

28. Daniele justifiably relied on Marel's representations of material fact concerning the orbital head, and Daniele would not have purchased Marel component parts and services and deferred replacing the poly slicer but for those representations of Marel.

29. Daniele's justified reliance on Marel's representations of material fact concerning the orbital head were to Daniele's detriment and damaged Daniele in an amount to be proven at trial.

## COUNT III
## BREACH OF CONTRACT

30. Daniele repeats and realleges the facts set forth in paragraphs 1 through 29 as though fully set forth herein.

31. Daniele and Marel were parties to a valid and binding contract for the purchase of a functional orbital head.

32. Marel breached the contract by failing to furnish Daniele with a functional orbital head.

33. As a result of Marel's breaches, Daniele has been damaged in an amount to be determined at trial.

# COUNT IV
# BREACH OF THE IMPLIED
# WARRANTY OF MERCHANTABILITY

34. Daniele repeats and realleges the facts set forth in paragraphs 1 through 33 as though fully set forth herein.

35. Marel is a seller and merchant of orbital heads.

36. The new orbital head that Marel sold to Daniele was not fit for the ordinary purpose for which it is used.

37. Daniele notified Marel of the damages it suffered due as a result of the defective new orbital head.

38. As a direct and proximate result of Marel's actions, Daniele has been damaged in an amount to be determined at trial.

# COUNT V
# BREACH OF THE IMPLIED WARRANTY
# OF FITNESS FOR A PARTICULAR PURPOSE

39. Daniele repeats and realleges the facts set forth in paragraphs 1 through 38 as though fully set forth herein.

40. Marel had reason to know of the particular purpose for which the new orbital head was purchased, and had reason to know that Daniele was relying on Marel's skill and/or judgment to furnish a suitable orbital head.

41. The new orbital head was entirely unsuitable and defective.

42. Daniele relied to its detriment on the implied warranties of Marel.

43. As a direct and proximate result of Marel's actions, Daniele has been damaged in an amount to be determined at trial.

## COUNT VI
## BREACH OF THE IMPLIED COVENENT
## OF GOOD FAITH AND FAIR DEALING

44. Daniele repeats and realleges the facts set forth in paragraphs 1 through 43 as though fully set forth herein.

45. A valid contract existed between Daniele and Marel for the purchase of a functional orbital head. The contract imposes upon Marel a duty of good faith and fair dealing in the performance and the enforcement of that agreement.

46. Marel breached the duty of good faith and fair dealing by failing to furnish Daniele with a functional orbital head.

47. Daniele was damaged by Marel's breach of the duty of good faith and fair dealing in an amount to be determined at trial.

## COUNT VII
## PROMISSORY ESTOPPEL

48. Daniele repeats and realleges the facts set forth in paragraphs 1 through 47 as though fully set forth herein.

49. Marel made a clear and unambiguous promise to Daniele to furnish Daniele with a functional orbital head.

50. Daniele reasonably and justifiably relied on Marel's promise.

51. In reasonable and justified reliance on Marel's promise, Daniele entered into a contract with Marel to purchase a functional orbital head.

52. As a result of its reliance on Marel's promise, Daniele has been damaged in an amount to be proven at trial.

## COUNT VIII
## UNJUST ENRICHMENT

53. Daniele repeats and realleges the facts set forth in paragraphs 1 through 52 as though fully set forth herein.

54. By tendering payment to Marel for the new orbital head, Daniele conferred a benefit upon Marel.

55. Marel appreciated the benefit conferred upon it by Daniele.

56. Marel accepted the benefit under circumstances in which it would be inequitable for Marel to retain the benefit without paying the value thereof.

57. As a result of this unjust enrichment, Daniele was damaged in the amount of $15,749.30.

## REQUEST FOR RELIEF

WHEREFORE, Daniele requests that the Court enter judgment against the Defendant for:

    A. Damages, including, but not limited to, compensatory, consequential, incidental, plus interest thereon at the legal rate until paid in full;

    B. Costs and attorneys' fees; and

    C. Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil procedure 38, Daniele hereby demands a trial by jury on all issues so triable.

Dated:  Providence, Rhode Island
       July 28, 2015

## VERIFICATION

I, Garrett Fortune, Plant Manager of Daniele International, Inc., hereby certify that I have read the foregoing Complaint and that all of the allegations therein are true and accurate to the best of my knowledge and belief.

Subscribed and sworn to before me this 23rd day of July, 2015.

*Susan Rich*

Notary Public
My Commission Expires:

SUSAN L. RICH
Notary Public-State of Rhode Island
My Commission Expires
September 18, 2018

DANIELE INTERNATIONAL, INC.

By its attorneys,

*/s/ Geoffrey W. Millsom*
Geoffrey W. Millsom (#6483)
Richard R. Beretta, Jr. (#4313)
Kennell M. Sambour (#9044)
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
Tel: (401) 274-7200
Fax: (401) 351-4607
GMillsom@apslaw.com